```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X
                                                        :
UNITED STATES OF AMERICA,                               :    12-CR-385 (ARR)
                                                        :
     -against-                                          :    NOT FOR ELECTRONIC
                                                        :    OR PRINT PUBLICATION
ANTHONY MAYES, JR.,                                     :
ANTOINE MAYES, and                                      :    MEMORANDUM
DANIEL MYRICK,                                          :    AND ORDER
                                                        :
                    Defendants.                         :
                                                        :
---------------------------------------------------------------------- X
```

ROSS, United States District Judge:

The government moves to empanel an anonymous and partially sequestered jury for the trial of defendants Anthony Mayes, Jr., Antoine Mayes, and Daniel Myrick, who are charged with membership in a racketeering conspiracy, violent crimes, and narcotics and firearms offenses. Specifically, the government requests that: "(1) the identities of all prospective jurors, including their names, addresses and places of employment, not be revealed to either the parties or the parties' attorneys, and (2) from the time each juror is empaneled until the conclusion of the trial, the jurors eat lunch together and be escorted by representatives of the United States Marshals Service between the courthouse and a central undisclosed location each day and at all times during recesses." Gov't Mem. in Supp. of Mot. for an Anonymous, Partially Sequestered Jury ("Gov't Mem."), Dkt. #41.[1] The government argues that these measures are necessary because the defendants, "who are the leaders of a violent criminal enterprise, have repeatedly sought to obstruct justice through witness intimidation and jury tampering." Id. at 1.

---

[1] The government's motion only references defendants Anthony Mayes and Antoine Mayes, since they were the only named defendants at the time that the government filed its motion. On July 11, 2013, the government filed a superseding indictment naming Daniel Myrick as a third defendant. See Second Superseding Indictment ("S-2"), Dkt. #57. On October 1, 2013, the government filed a letter regarding Myrick and asserted that an anonymous and partially sequestered jury is necessary for the reasons stated in its prior submissions. Dkt. #81. Therefore, the court will consider the government's motion and supporting papers as applying to all three defendants.

1

The three defendants oppose the government's motion. They argue that empaneling an anonymous jury will lead the jurors to infer that the defendants are dangerous and will therefore unfairly burden the presumption of innocence. Anthony Mayes Mem. in Opp'n ("Anthony Mayes Opp'n"), Dkt. #46; Antoine Mayes Mem. in Opp'n ("Antoine Mayes Opp'n"), Dkt. #53; Myrick Mem. in Opp'n ("Myrick Opp'n"), Dkt. #79.

In support of its motion, the government also submitted a supplemental affidavit of Federal Bureau of Investigation Special Agent Jed Salter ex parte, in camera, and under seal. Dkt. #42, Attachment 1 ("Supplemental Aff."). On November 14, 2013, upon the government's motion, the court ordered that the supplemental affidavit shall remain under seal but may be disclosed by the government to the defendants, their counsel, defense investigators, and staff assisting counsel, under the conditions set forth in the order. Dkt. #95. The court granted defense counsel the opportunity to file additional submissions after reviewing the supplemental affidavit. Dkt. #96. Defense counsel have not filed any additional submissions.

After considering the government's memorandum and supporting exhibits, the government's supplemental affidavit, and defense counsel's arguments, I have concluded that there is strong reason to believe the jury needs protection in this case. I have also concluded that reasonable precautions can be taken to minimize the prejudicial effects on the defendants from empaneling an anonymous and partially sequestered jury. Therefore, for the reasons explained more fully below, the government's motion is granted.

**DISCUSSION**

To determine whether to empanel an anonymous jury, the court must balance the need to protect the jurors, the public interest in the integrity of the judicial system, and the defendant's right to the presumption of innocence. See United States v. Quinones, 511 F.3d 289, 295 (2d Cir. 2007); United States v. Thomas, 757 F.2d 1359, 1365 (2d Cir. 1985). Therefore, it is well settled that an anonymous jury is only warranted after "(a) concluding that there is strong reason to believe the jury needs protection, and (b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected." United States v. Gotti, 459 F.3d 296, 345 (2d Cir. 2006) (quoting United States v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991)). Within these parameters, however, the decision to empanel an anonymous jury is within the discretion of the trial court. See Quinones, 511 F.3d at 295; Paccione, 949 F.2d at 1192. The Second Circuit has repeatedly upheld the use of anonymous juries, finding that "when genuinely called for and when properly used, anonymous juries do not infringe a defendant's constitutional rights." United States v. Pica, 692 F.3d 79, 88 (2d Cir. 2012) (citing Quinones, 511 F.3d at 295); United States v. Thai, 29 F.3d 785, 800 (2d Cir. 1994); see also Thomas, 757 F.2d at 1365.

**A. Need for Protection of Jury**

Courts in the Second Circuit consider a range of factors to assess whether a jury needs protection, including the seriousness of the charges, the dangerousness of the defendants, the defendants' ability to interfere with the judicial process, previous attempts by the defendants to interfere with the judicial process, and the degree of media attention that the trial is likely to attract. See United States v. Locascio, 357 F. Supp. 2d 558, 560 (E.D.N.Y. 2005); United States v. Cacace, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004). Applying these factors to the case, I find

that the government has demonstrated a strong reason to believe that the jury needs protection.

The most significant factor weighing in favor of an anonymous jury is the defendants' history of alleged attempts to interfere with the judicial process. First, the sealed supplemental affidavit details an alleged scheme by Anthony Mayes to tamper with a witness in a murder investigation. Supplemental Aff. ¶¶ 4-5. Second, the government presents evidence of witness tampering in Anthony Mayes's state trial for burglary and assault in North Carolina. A witness testified at a bail hearing that Anthony Mayes had bailed him out of jail and offered him $1,000 to change his story, and the witness further testified that he entered protective custody after Anthony Mayes's brother came by his house looking for him. Gov't Mem. 8-9 & Ex. G-H. Third, the government alleges that Anthony Mayes engaged in a jury tampering scheme during the trial in North Carolina on the burglary charge. Supplemental Aff. ¶ 6. Fourth, the government asserts that Anthony Mayes frequently directed an individual to destroy firearms that were evidence in crimes. Gov't Mem. 11. Fifth, Anthony Mayes pleaded guilty to perjury and identity theft in state court in North Carolina in connection with his use of a false name during testimony. Gov't Mem. 10 n.2 & Ex. K.

Courts in this Circuit have repeatedly cited a history of interference with the judicial process as particularly strong evidence that the jury is in need of protection. See Quinones, 511 F.3d at 295 ("We have identified strong reasons to believe that a jury needed protection in situations where the government demonstrated a defendant's willingness to tamper with the judicial process."); Thai, 29 F.3d at 801 (collecting cases); United States v. Vario, 943 F.2d 236, 240 (2d Cir. 1991) ("An obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries."). Courts have frequently empaneled anonymous juries based on the specific types of allegations that are

presented by the government in this case. See Gotti, 459 F.3d at 346 (charges of witness tampering in connection with grand jury testimony); United States v. Blackshear, 313 Fed. App'x 338, 342-43 (2d Cir. 2008) (defendant had attempted to bribe and intimidate witnesses); United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995) (defendants had sought to bribe and threaten witnesses and had attempted to influence a witness in a prior state case); Vario, 943 F.2d at 240 (grand jury tampering); United States v. Tutino, 883 F.2d 1125, 1132-33 (2d Cir. 1989) (attempted jury tampering in prior trial); United States v. Vernace, No. 11-CV-05(S-1)(SLT), 2013 WL 142373, at *3 (E.D.N.Y. Jan. 11, 2013) ("two crucial eyewitnesses . . . recanted their testimony" prior to defendant's state trial); Locascio, 357 F. Supp. 2d at 561-62 (indictment for witness tampering and allegations of destruction of evidence). Indeed, one case rejected the use of an anonymous jury because the defendants were **not** accused of the types of interference with the judicial process that the government has alleged here. United States v. Gambino, 818 F. Supp. 536, 540 (E.D.N.Y. 1993) (finding anonymous jury not warranted where "[t]here is no evidence that these defendants either participated in or directed efforts to obstruct justice, tamper with juries or intimidate witnesses.").[2]

As the defendants note, the government has presented accusations, not proof, and the defendants are not charged in the indictment with witness tampering, jury tampering, or obstruction of justice. Anthony Mayes Opp'n 5; Antoine Mayes Opp'n 5.[3] Still, the court can rely on the government's proffer of facts to determine whether there is reason to believe that the

---

[2] Myrick relies on United States v. Millan-Colon, 834 F. Supp. 78 (S.D.N.Y. 1993), where the court found evidence of prior obstruction of justice insufficient to warrant an anonymous jury. Myrick Opp'n 4-6. However, the court in Millan-Colon was presented with more limited evidence of defendants' past attempts to tamper with witnesses and jurors, including testimony about veiled threats and "unverified and unsworn triple hearsay" from a confidential informant. Millan-Colon, 834 F. Supp. at 84 & n.4. It is also worth noting that in Millar-Colon the court still ordered some measures that are similar to those requested here: precluding questioning about jurors' exact addresses or places of employment, and supervision by U.S. Marshals at the courthouse and during lunch. Id. at 85-86.
[3] Anthony Mayes also disputes the government's allegations in a pro se submission, arguing there is no evidence of jury tampering or destruction of evidence. Letter from Anthony Mayes, June 14, 2013, Dkt. #50.

5

jury needs protection. See United States v. Wong, 40 F.3d 1347, 1376-77 (2d. Cir 1994) ("The government's pretrial proffer on this issue, borne out by evidence at trial, indicated that [defendant's gang] had an extensive history of interfering with the judicial process."); Tutino, 883 F.2d at 1132-33 (relying on government affidavits to establish prior jury tampering); Vernace, 2013 WL 142373, at *3. Therefore, I find that an evidentiary hearing is not necessary. See United States v. Kadir, 718 F.3d 115, 121 (2d Cir. 2013) (district court has discretion to determine whether to hold an evidentiary hearing on the government's allegations that a defendant obstructed justice); Thomas, 757 F.2d at 1365 ("trial within a trial" regarding allegations of previous attempts to interfere with the judicial process was not required). I find the government's proffer of facts, including FBI affidavits and transcripts from prior judicial proceedings, provides ample basis to conclude that the jury is in need of protection.[4]

Furthermore, I find there is a strong likelihood that the defendants still have the ability to interfere with the judicial process, making precautionary measures necessary. Anthony and Antoine Mayes argue that they will remain in custody during the trial and will have no ability to interfere with jurors. Anthony Mayes Opp'n 5-6; Antoine Mayes Opp'n 5. Yet the government asserts that the defendants are part of a large-scale criminal enterprise with many associates who "remain at large and loyal to" the defendants. Gov't Mem. 15 & Ex. C, ¶ 10.[5] The government

---

[4] The government's two allegations of witness tampering have been the subject of prior sworn testimony in judicial proceedings. Supplemental Aff. ¶ 5; Gov't Mem., Ex. E-H. The government supports the allegations of jury tampering and destruction of evidence with FBI affidavits that cite unsworn statements. Supplemental Aff. ¶ 6; Gov't Mem., Ex. C, ¶ 8. However, the sources are identified as "cooperating witnesses," and the government has indicated that it plans to introduce evidence of these alleged acts at trial. Gov't Mem. 11 (noting that both cooperating witnesses who are the sources of the destruction of evidence allegation are available to testify at trial); id. at 16-17 ("[T]he jurors will be aware from testimony at trial that the [defendants] have sought to tamper with jurors and witnesses before."). To support the allegation that Anthony Mayes perjured himself by giving a false name in testimony, the government provided the transcript of the proceeding where he gave a false name, Gov't Mem., Ex. J, and the transcript of his guilty plea to perjury, Gov't Mem., Ex. K.

[5] According to the government, the FBI has learned that during Anthony and Antoine Mayes's previous trial in this court in 2012, 10-CR-473 (ARR), "at least one individual in the courtroom gallery used a cellular phone to record a cooperating witness's testimony." Gov't Mem. 16 n.5 & Ex. C, ¶10. The affidavit supporting this assertion relies on information from a "confidential source," with no further information provided regarding the source's reliability, so

states that several cooperating witnesses have expressed fears of "reprisals by the defendants and their associates." Id. at 15-16. In numerous cases, courts in this Circuit have found that defendants' membership in a criminal organization with members still at large demonstrates an ongoing ability to interfere with the judicial process. See Thai, 29 F.3d at 801 (defendants were accused of being members of a gang with "at least 100 members, many of whom were not in custody"); Thomas, 757 F.2d at 1365 ("defendants were alleged to be part of a group that possessed the means to harm jurors"); United States v. Prado, No. 10-CR-74 (JFB), 2011WL 3472509, at *8 (E.D.N.Y. Aug. 5, 2011) (defendants were members of "large-scale criminal enterprise with a history of violence" and with many members still at liberty); United States v. Wilson, 493 F. Supp. 2d 397, 399-400 (E.D.N.Y. 2006) (defendant was member of "violent organization that engages in acts of robbery, murder and narcotics trafficking" and had other members still at large). Therefore, I find that the ability for defendants' associates who are still at large to interfere with jurors also weighs strongly in favor of an anonymous jury.

      The seriousness of the charges and the dangerousness of the defendants also weigh in favor of an anonymous jury in this case. There can be no doubt that the charges are serious: in addition to the racketeering conspiracy charge against all three defendants, Anthony Mayes and Myrick are charged with murder in aid of racketeering and Antoine Mayes is charged with attempted murder in aid of racketeering, among numerous other charges. The defendants face lengthy prison sentences and substantial financial penalties, creating a stronger motive to tamper with a jury. See Paccione, 949 F.2d at 1192; Locascio, 357 F. Supp. 2d at 561. Furthermore, the defendants are charged with numerous violent crimes. It is certainly true that, as Antoine Mayes notes, this district frequently tries violent crimes without empaneling anonymous juries. Antoine

---

the court will not rely on this information. See Locascio, 357 F. Supp. 2d at 562 ("The Court declines to rely on 'confidential source information' where there is no indication of the reliability of such information.").

7

Mayes Opp'n 6-7. Here, though, the government anticipates presenting evidence at trial of the defendants' past alleged incidents of jury and witness tampering. Gov't Mem. 16-17. Hearing this evidence, in combination with the violent nature of the charges, could lead jurors to fear for their safety unless their identities are kept anonymous. See United States v. Lemos, No. 10-CR-954 (NGG), 2012 WL 6151733, at *2-3 (E.D.N.Y. Dec. 11, 2012) (finding jurors may fear for their safety because "much of the evidence that the Government intends to present will involve acts of violence aimed at protecting and expanding the enterprise and keeping victims and rivals in fear of the enterprise and its members"); Cacace, 321 F. Supp. 2d at 535 (seriousness of charges and defendant's alleged history of violence weigh in favor of anonymous jury).

Finally, extensive pre-trial publicity and a likelihood of ongoing media coverage is a factor that courts have found "significant" in determining whether an anonymous jury is warranted. Kadir, 718 F.3d at 121; see also Thai, 29 F.3d at 801 (anonymous jury may be warranted "when there has been extensive pretrial publicity in cases involving allegations of violent conduct"); Paccione, 949 F.2d at 1193 (case had been front-page news and was likely to attract significant media attention); Vario, 943 F.2d at 240 (newspaper had recently published cover story about the case). In this case, the parties disagree about the likelihood of press interest in the trial. The government argues that "there is reason to believe the trial will attract media coverage" based on the seriousness of the charges, the lengthy history of the case, and the fact that Anthony Mayes was previously featured on an episode of America's Most Wanted about one of the murders charged in this case. Gov't Mem. 17. The defendants argue that there is no reason to believe the trial will garner media attention, noting that Anthony Mayes and Antoine Mayes previously stood trial in this court without attracting press interest. Anthony Mayes Opp'n 6; Antoine Mayes Opp'n 7. Although the episode of American's Most Wanted featuring

Anthony Mayes suggests some likelihood that the trial will garner media coverage, the government has not pointed to any recent pre-trial publicity, so I find that this factor does not weigh as heavily as the others in favor of an anonymous jury.

Considering all of the above factors, I find that the defendants' alleged past attempts to interfere with the judicial process, their ability to interfere with the current trial through associates still at large, the seriousness of the potential criminal penalties, and the violent nature of the charges all provide ample reason to believe the jury must be kept anonymous in order to protect jurors from interference. See Vario, 943 F.2d at 241 (anonymous jury is warranted where there is "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf or a showing that trial evidence will depict a pattern of violence by the defendants and his associates such as would cause a jury to reasonably fear for his own safety"); Prado, 2011 WL 3472509 at *2 (anonymous jury is warranted "in light of the defendants' and their associates' alleged history of witness tampering and related offenses, combined with their alleged membership in a large-scale, violent gang with numerous members still at liberty—who have both the means and a demonstrated willingness to obstruct justice— and given the seriousness of the pending charges against defendants in this case"); Locascio, 357 F. Supp. 2d at 563 (anonymous jury is warranted "given the seriousness of the charges, the lengthy prison sentences that convictions would entail, the evidence of [defendant's] efforts to interfere with the judicial process, and the ability of the defendants to enlist" associates with a history of juror intimidation).

Furthermore, I find that, based on the same factors, the partial sequestration measures requested by the government are "necessary and appropriate" to ensure that jurors "do not mingle in the courthouse with the public or any potential trial spectator." Lemos, 2012 WL

9

6151733 at *4. Similar measures have been used by this court in prior cases with anonymous juries. See Blackshear, 313 Fed. App'x at 342; Vernace, 2013 WL 142373 at *5; Locascio, 357 F. Supp. 2d at 564.

I reject Antoine Mayes's contention that the court should grant him a severance because the government has not shown that an anonymous and partially sequestered jury is warranted for him in particular. Antoine Mayes Opp'n 9-10. Antoine Mayes argues that the government has not produced evidence showing that he individually has a history of obstructing justice. Antoine Mayes Opp'n 3. Yet courts in the Second Circuit have repeatedly held that allegations of obstruction of justice by one defendant can warrant an anonymous jury for all co-defendants, particularly where the defendants are charged with being leaders of the same criminal enterprise. See Aulicino, 44 F.3d at 1117 (use of anonymous jury based on "sufficient evidence of potential jury tampering" by defendant's co-conspirators did not violate defendant's due process rights "even in the absence of evidence that he in particular had sought to obstruct justice"); Vario, 943 F.2d at 240 (upholding use of anonymous jury for all defendants based on one co-conspirator's act of grand jury witness tampering); Prado, 2011 WL 3472509 at *7 (the fact that all defendants "were not individually charged with witness tampering does not alter the Court's conclusion that the use of an anonymous jury is appropriate here, particularly in light of the fact that [defendants] are alleged to be part of, or to have aided, the same racketeering enterprise"); Locascio, 357 F. Supp. 2d at 564 ("Where there is sufficient evidence, as here, that the actions of his co-defendant merit an anonymous jury . . . severance is not mandated because the defendant in particular had not sought to obstruct justice.").

I also reject defendants' argument that there are less burdensome measures that the court can take to address any potential concerns about juror interference. Anthony Mayes proposes

10

court orders keeping jurors' names and identifying information out of the public record and prohibiting members of the media or public from contacting jurors. Anthony Mayes Opp'n 6-7. Myrick proposes an order prohibiting members of the media from contacting jurors or their families, friends, or employers. Myrick Opp'n 11.[6] Antoine Mayes asserts that concerns about pre-trial publicity can be addressed through questioning potential jurors about any prior exposure to media coverage and instructing jurors that they should not read or watch any media coverage. Antoine Mayes Opp'n 8. Yet these proposed measures all assume that the court's primary concern is to protect jurors from contact by the media. Instead, an anonymous and partially sequestered jury is primarily necessary to protect jurors from potential contacts by the defendants or their associates, in light of the defendants' history of alleged interference with the judicial process, their ability to interfere with the ongoing case, and the seriousness of the charges. The measures proposed by the defendants would not adequately address these serious concerns.

Therefore, I find that an anonymous and partially sequestered jury is necessary in this case to prevent juror interference and to protect the integrity of the judicial process.

**B. Precautions to Minimize Prejudice to Defendants**

Having found that the measures requested by the government are warranted in this case, I must consider what precautionary steps are necessary to protect the defendants' constitutional right to a fair trial and to minimize any prejudicial effects. In particular, the court must ensure that the use of an anonymous jury does not impair the defendants' right to a meaningful voir dire, and the court must offer jurors an explanation for the measures that does not unfairly burden the presumption of innocence. See Pica, 692 F.3d at 88; Paccione, 949 F.2d at 1193; Thomas, 757 F.

---

[6] Defendant Myrick also argues that the efficacy of anonymous juries at protecting against jury tampering is "overstated" and that anonymous juries may in fact increase the chance of jury tampering because jurors can be dishonest during voir dire and lie to get onto the jury. Myrick Opp'n 9. But isolated incidents where jurors on anonymous juries have been accused of dishonesty do not outweigh the far greater number of times that courts in this Circuit have upheld the practice of empaneling an anonymous jury as a necessary protection for jurors.

11

2d at 1363-64; Prado, 2011 WL 3472509 at *5.

To protect the defendants' right to a meaningful voir dire, the court will utilize an extensive questionnaire, based on input from government and defense attorneys, to collect information about potential jurors' backgrounds, prior involvement with the legal system, knowledge of individuals involved in the case, and any other factors that may impact their ability to render a fair and impartial verdict. The jurors' names, addresses, and places of employment will be removed from the questionnaires and placed in safekeeping with the Clerk of Court. Neither the parties nor their counsel will have access to this identifying information. Each prospective juror will be questioned individually by the court, after consultation with counsel, to uncover any potential bias. Through the questionnaire and the individual questioning of jurors, both sides will have access to all relevant information they will need to make informed choices during jury selection. Questionnaires have been used in numerous cases in this Circuit where courts have empaneled anonymous juries. See, e.g., Pica, 692 F.3d at 88; Thai, 29 F.3d at 801; Lemos, 2012 WL 6151733 at *4; Wilson, 493 F. Supp. 2d at 401.

As courts in this Circuit have repeatedly stated, the jurors must be given a "plausible and nonprejudicial reason for not disclosing their identities." Gotti, 459 F.3d at 345; see also Paccione, 949 F.2d at 1192; Prado, 2011 WL 3472509 at *9. The explanation must be given "in such a way as to avoid intimating that defendants posed any risk to persons or to the judicial process." Quinones, 511 F.3d at 296. In determining what explanation to give to jurors, I take very seriously the defendants' concern that the precautionary measures being taken in this case could make the defendants appear dangerous and lead jurors to improperly speculate about their guilt. Anthony Mayes Opp'n 3-4; Antoine Mayes Opp'n 2. The government proposes that the jurors be told that anonymity is necessary to protect their privacy and to shield them from

inquiries from the media and the public. Gov't Mem. 20. Defendant Myrick, while opposing the motion for an anonymous jury, suggests that if the motion is granted the jurors should be told the reason is to protect them from harassment by the media. Myrick Opp'n 2.

I find it will be sufficiently "plausible and nonprejudicial" to inform the jurors that their exact names, addresses, and places of employment are being withheld to protect their privacy from the public and the media, and to further note that this practice has been used in many federal criminal trials. Courts in this Circuit have upheld this type of explanation in numerous cases. See Kadir, 718 F.3d at 120-21 (court can tell jurors that anonymity is necessary to protect their privacy "given the media interest in the case"); Thai, 29 F.3d at 801 (jury questionnaire stated that empaneling an anonymous jury "is not an unusual practice" and is intended to "ward off curiosity that might infringe on a juror's privacy"); Paccione, 949 F.2d at 1193 (jurors were told "that the special precautions were designed to protect the jury from contacts by the media, thereby implying that the security measures were not the result of threats from the defendants"); Wilson, 493 F. Supp. 2d at 401 (court will instruct jury that anonymity is to "maintain their personal privacy and their ability to render a fair verdict in light of the media and public attention that this trial is likely to receive").

The court will also need to provide a non-prejudicial explanation for the sequestration measures that are being taken in this case. The government proposes that the jurors be told that they are being escorted to and from an undisclosed location by U.S. Marshals "to protect their privacy and to ensure that the trial can proceed expeditiously." Gov't Mem. 20. I find that this explanation is appropriate and offers a "plausible and nonprejudicial" reason for these measures. See Lemos, 2012 WL 6151733 at *5 (court will tell jurors that "transportation is being provided to protect their privacy and to ensure a timely start at each juncture of what promises to be a

lengthy trial."); Prado, 2011 WL 3472509 at *11 (any potential prejudice due to sequestration procedures "can be avoided through the use of the same neutral instructions that will be given to the jury regarding anonymity"); Wilson, 493 F. Supp. 2d at 401.

## CONCLUSION

For the foregoing reasons, the government's motion for an anonymous and partially sequestered jury is granted, subject to the precautions outlined above.

SO ORDERED.

                                                                                                                        __/s/_____
                                                                                                                        Allyne R. Ross
                                                                                                                        United States District Judge

Dated:        November 25, 2013
                  Brooklyn, New York