UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
   -against-                                  :       12-CR-385 (ARR)
                                                            :
ANTHONY MAYES, JR.,                                         :       MEMORANDUM
ANTOINE MAYES, and                                          :       AND ORDER
DANIEL MYRICK,                                              :
                                                            :
                  Defendants.   :
                                                            :
------------------------------------------------------------------ X

ROSS, United States District Judge:

      Defendants, Anthony Mayes, Jr., Antoine Mayes, and Daniel Myrick, are charged in a fifteen-count indictment with membership in a racketeering conspiracy (Count One) and racketeering (Count Two), among other offenses. Antoine Mayes has moved on collateral estoppel grounds to dismiss seven of the predicate racketeering acts alleged in Counts One and Two of the indictment. The challenged acts, Racketeering Acts Twelve through Eighteen, charge seven cocaine base sales to which Antoine Mayes pleaded guilty in a prior proceeding. Antoine Mayes argues that the jury in the prior proceeding heard the evidence of these sales but acquitted him and Anthony Mayes of conspiracy to distribute cocaine base, and therefore the government cannot use these seven sales to prove the RICO conspiracy and substantive RICO charges against the Mayes brothers in the instant case.

      After considering the parties' submissions, I conclude that the doctrine of collateral estoppel does not require dismissal of the seven racketeering acts from the indictment, as there will be a number of issues to be decided by the jury on which these acts provide relevant evidence not precluded by the doctrine. Rather, application of the doctrine requires only instructing the jurors that they cannot consider these seven acts in assessing whether the

1

government has met its burden of proving beyond a reasonable doubt one particular element of the charged racketeering conspiracy—specifically, an agreement that at least two predicate acts would be committed by some member of the conspiracy as part of the conduct of the enterprise. In this respect, and for the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

Defendants Anthony Mayes and Antoine Mayes were previously tried in this court in 2012 on charges, inter alia, of conspiring to distribute 280 grams or more of cocaine base between January 2008 and June 2010. See 10-CR-473 (ARR), Sixth Superseding Indictment, Dkt. #215. Prior to opening statements at that trial, Antoine Mayes pleaded guilty to seven counts of possession of cocaine base with intent to distribute in connection with seven controlled narcotics buys arranged by the FBI between February 9, 2010, and April 8, 2010. The defendants proceeded to trial on the remaining charges, and the government introduced Antoine Mayes's guilty pleas to the seven narcotics sales as evidence of the charged cocaine base conspiracy. See 10-CR-473 (ARR), Tr. 813-819 & Gov't Ex. 93. On June 6, 2012, the jury acquitted Antoine Mayes and Anthony Mayes of the cocaine base conspiracy, among other charges.

On June 7, 2012, the grand jury returned the first indictment in the instant case. Since then, the grand jury has returned two further indictments, including the operative indictment on July 11, 2013. See 12-CR-385 (ARR), Second Superseding Indictment ("S-2"), Dkt. #57. The government alleges that the defendants were members of the Mayes Brothers Enterprise, a gang of individuals engaged in "drug trafficking, promoting prostitution and acts of violence" in Brooklyn, New York, Williamston, North Carolina, and other locations between January 1998 and June 2010. Id. ¶¶ 1-2. Count One charges defendants Anthony Mayes, Antoine Mayes, and

Myrick with conspiracy to violate the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). The indictment alleges that the defendants conspired to conduct the affairs of the enterprise through a pattern of racketeering activity consisting of twenty-one specified racketeering acts. Id. ¶¶ 8-28. Count Two charges the defendants with racketeering in violation of 18 U.S.C. § 1962(c). This substantive RICO count realleges and incorporates the same twenty-one racketeering acts alleged in the RICO conspiracy count.

In Racketeering Acts Twelve through Eighteen, the government charges the seven cocaine distributions to which Antoine Mayes pleaded guilty as predicate acts for the RICO conspiracy and substantive RICO charges. Antoine Mayes has moved to dismiss these racketeering acts from the indictment. He argues that the jury in the prior case heard the evidence that Antoine Mayes had pleaded guilty to the seven controlled buys but nonetheless acquitted both Mayes brothers of any cocaine base conspiracy during a time frame that encompassed the seven sales, and therefore the doctrine of collateral estoppel bars the government from using these same distributions as predicate acts to prove any aspect of the RICO charges in this case. Antoine Mayes Mot., Dkt. #102. The government opposes the motion, arguing that even though Antoine and Anthony Mayes were acquitted of the prior cocaine base conspiracy, the seven controlled buys can still be used as proof of a distinct, broader RICO conspiracy alleged in the current indictment. Gov't Opp'n, Dkt. #104, at 2-3.

## DISCUSSION

The Fifth Amendment protection against double jeopardy incorporates the doctrine of collateral estoppel. Ashe v. Swenson, 397 U.S. 436, 445 (1970). In a criminal proceeding, collateral estoppel "bars the Government from relitigating an issue decided in a defendant's

favor by a valid final judgment." United States v. Citron, 853 F.2d 1055, 1058 (2d Cir. 1988) (citing Ashe, 397 U.S. at 443). The court must engage in a two-step analysis to determine how the doctrine of collateral estoppel applies to this case. First, the court must determine what the jury's verdict in the prior case necessarily decided. Second, the court must consider how that jury finding bears on the instant case. United States v. Jackson, 778 F.2d 933, 938-39 (2d Cir. 1985).

**A.     Prior Judgment**

The defendant bears the burden of establishing that the issue he seeks to foreclose was necessarily decided in his favor in the prior proceeding. Dowling v. United States, 493 U.S. 342, 350-51 (1990). The court must examine the full record of the prior proceeding, including the pleadings, evidence, and charge, to determine "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." Ashe, 397 U.S. at 444. "Since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant." Citron, 853 F.2d at 1058 (internal quotation marks and citation omitted).

I find that this is one of those rare cases where the court can identify a clear basis for the prior jury verdict of acquittal. At the prior trial, both Antoine and Anthony Mayes conceded that they had engaged in narcotics distributions. Of particular relevance here, the government adduced evidence of Antoine Mayes's guilty plea allocutions to the seven cocaine base distributions between February and April 2010, all of which occurred within the time frame of the cocaine base distribution conspiracy charged against both Mayes brothers in the same indictment. Moreover, both Antoine and Anthony Mayes readily acknowledged that these cocaine base distributions had occurred, and both the government and Antoine Mayes's counsel

referenced the guilty pleas in their summations. See 10-CR-473 (ARR), Tr. 903-04, 982. Specifically, Antoine Mayes's counsel stated, "Now, as you know, Antoine Mayes in fact is a crack distributor. He's pled guilty to the distribution of crack on seven occasions." Id. at 982. Thus, it is undisputed that the sole defense the brothers interposed on the cocaine base conspiracy charge was that neither of them had agreed to conduct his conceded narcotics distributions jointly with his brother. See Gov't Mem. of Law in Supp. of Mot. in Limine, Dkt. #92, at 46-47; Antoine Mayes Mot. at 4-5. Put another way, when the cocaine base conspiracy charge was submitted to the jury, the only contested issue was whether Antoine and Anthony Mayes had entered into an <u>agreement</u> to distribute the cocaine base that each had acknowledged selling. If the jury believed that the Mayes brothers had entered into an unlawful agreement regarding any one or more of Antoine Mayes's seven sales, the jury would have been compelled to return a guilty verdict on the charge of conspiracy to distribute cocaine base, albeit a lesser included offense involving a lesser quantity of cocaine base.[1] By acquitting both defendants of that charge, the jury necessarily determined that the government had not proven beyond a reasonable doubt the existence of an agreement between the two brothers to distribute cocaine base on any of the seven occasions that were the subject of Antoine Mayes's guilty pleas.

This case can be distinguished from other cases where courts examined prior conspiracy acquittals and found "no way of telling whether the basis of the acquittal was disbelief of some portion of the Government's evidence . . . or whether the jury simply regarded the evidence as insufficient to prove an agreement." Jackson, 778 F.2d at 940; see also United States v. Mahaffy, 499 F. Supp. 2d 291, 297 (E.D.N.Y. 2007), aff'd, 238 F. App'x 852 (2d Cir. 2008) (court cannot

---

[1] The verdict sheet submitted to the jurors with respect to the cocaine base distribution conspiracy count required them to consider and determine whether the government had proven beyond a reasonable doubt that each defendant charged had conspired to distribute <u>any</u> quantity of cocaine base. The acquittal on this conspiracy count thus eliminated the possibility that either Mayes brother had agreed with the other with regard to any of Antoine Mayes's seven cocaine base sales.

5

determine what prior jury necessarily decided because "[t]he jury could have based its verdict of acquittal on reasonable doubt as to any of the elements" of the charge); United States v. Massino, 311 F. Supp. 2d 316, 319 (E.D.N.Y. 2004) (prior conspiracy acquittal did not mean jury necessarily found defendant lacked the intent to kill the victims, because jury could have found lack of proof of an agreement); United States v. Rigas, No. S102CR1236 (LBS), 2004 WL 2434965, at *2 (S.D.N.Y. Nov. 1, 2004) (finding it "impossible to determine" whether prior jury acquitted defendant of conspiracy based on lack of proof of intent or lack of proof that he joined an agreement). In Mahaffy, Massino, and Rigas, the defendants argued that their prior conspiracy acquittals necessarily represented a finding that they lacked the requisite intent. The courts rejected these arguments, concluding that the jury might not have reached the issue of intent and instead could have acquitted based on the government's failure to prove an unlawful agreement. See Massino, 311 F. Supp. 2d at 321 ("[I]f the jury found that [defendant] did not join a murder conspiracy agreement, any determination by the jury of [defendant's] intent would have been unnecessary.")

Here, by contrast, Antoine Mayes contends that the lack of an unlawful agreement is exactly the issue that the prior verdict necessarily determined. Antoine Mayes Mot. at 10-11. Under the particular facts of this case, where the evidence of Antoine Mayes's guilty pleas uncontrovertibly established that he engaged in cocaine base distribution, there could have been no reasonable basis for the jury's acquittal on the conspiracy count other than a finding that the government failed to prove an agreement between the Mayes brothers to conduct that distribution together. See United States v. Duffy, 188 F. Supp. 2d 281, 285 (E.D.N.Y. 2002), aff'd, 40 F. App'x 637 (2d Cir. 2002) (where sole defense argument was mistaken identity, acquittal was necessarily based on "reasonable doubt that [defendant] was the assailant"); Aparo

6

v. Superior Court for the Judicial Dist. of Hartford/New Britain at Hartford, 956 F. Supp. 118, 126-27 (D. Conn. 1996), aff'd, 129 F.3d 113 (2d Cir. 1997) (where defendant admitted carrying out actions that would have compelled a murder conviction if done with the requisite intent, acquittal necessarily meant the jury found she lacked specific intent).

My conclusion regarding what the prior jury verdict necessarily determined is a narrow one. As the government argues, the acquittal in the prior trial does not mean the jury necessarily found "'no unlawful agreement' of any kind" between Anthony and Antoine Mayes. Gov't Opp'n at 2. The Mayes brothers' acquittal of conspiracy to distribute cocaine base says nothing about whether they agreed to engage in a conspiracy involving a different type of narcotic drug, or a narcotics conspiracy spanning a distinct time frame, or a conspiracy to commit an entirely different crime, such as the RICO conspiracy alleged in this case. However, I agree with Antoine Mayes that in order to acquit the Mayes brothers of the cocaine base conspiracy charged in the prior case, the jury necessarily made a finding that Antoine Mayes's seven cocaine sales within the time frame of the charged conspiracy were not made pursuant to any unlawful agreement with Anthony Mayes. It is only that circumscribed fact that the government is collaterally estopped from relitigating at this trial.

**B.     Application to Present Case**

Having determined what the prior jury acquittal necessarily found regarding the seven narcotics distributions, I must now determine the implications for the present case. Antoine Mayes seeks to bar the government from using for any purpose at this trial the seven sales charged as predicate Racketeering Acts Twelve through Eighteen. He argues that since a jury acquitted Antoine and Anthony Mayes of conspiring to engage in those sales, the government cannot now "reformulat[e] the 7 sales as RICO predicates in connection with a differently

7

defined agreement between the Mayes brothers." Antoine Mayes Reply, Dkt. #105, at 5. The argument, however, sweeps far too broadly. As explained below, I conclude that the doctrine of collateral estoppel does not require that these seven racketeering acts be dismissed entirely from the substantive RICO and RICO conspiracy counts in the instant indictment. The fact necessarily found by the prior jury's acquittal on the cocaine base conspiracy charge—that the Mayes brothers did not enter into an unlawful agreement regarding Antoine Mayes's seven cocaine base sales—does not preclude any finding relating to the substantive RICO violation alleged in Court Two of the current indictment, and precludes only one limited finding relating to the RICO conspiracy alleged in Count One.

1. **The Substantive RICO Charge**

In Count Two, the defendants are charged with violating Section 1962(c) of the RICO statute, which provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Among the elements the government must prove to establish a defendant's violation of this statute are the existence of an enterprise within the meaning of the statute, the nexus of the enterprise with interstate commerce, and the defendant's participation in the affairs of the enterprise through a pattern of racketeering activity consisting of at least two predicate acts. See 18 U.S.C. § 1961(5); United States v. Basciano, 599 F.3d 184, 205 (2d Cir. 2010). This pattern requirement, in turn, involves proof that the acts are interrelated and not merely isolated events, as well as proof that the acts either extended over a substantial period of time or otherwise posed a threat of continued criminal activity. See United States v. Indelicato, 865 F.2d 1370, 1381 (2d Cir. 1989) ("[A] RICO pattern may not be

8

established without some showing that the racketeering acts are interrelated and that there is continuity or a threat of continuity.").

To convict a defendant on a substantive RICO charge, the government must prove that the defendant committed two predicate acts himself, since the defendant is not "accountable for the racketeering acts of others." Basciano, 599 F.3d at 207 (quoting Indelicato, 865 F.2d at 1384). Yet the government can use acts by other enterprise members as evidence against the defendant to establish other required elements of the charge, including the existence of the enterprise, the nexus of the enterprise with interstate commerce, and the interrelationship and continuity of the predicate acts necessary to establish the pattern of racketeering. See id. at 206 ("[E]vidence beyond a defendant's own predicate acts—whether alleged or not—is relevant to establishing a charged pattern of racketeering."); United States v. DiNome, 954 F.2d 839, 843 (2d Cir. 1992) (proof of the existence of the enterprise and pattern of racketeering activity "may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts."); Indelicato, 865 F.2d at 1384 (acts by other enterprise members can bear on the nature of the enterprise, prove the relatedness and continuity essential to a pattern, and "help to establish that the defendant's own acts constitute a pattern within the meaning of RICO."). In short, "the 'various criminal activities' of racketeering confederates are admissible against each defendant 'to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities.' " Basciano, 599 F.3d at 207 (quoting DiNome, 954 F. 2d at 844).

I find that the doctrine of collateral estoppel does not bar the government from using Antoine Mayes's guilty pleas to the seven cocaine base distributions to prove the substantive

9

RICO offense against him. A racketeering enterprise is legally distinct from a conspiracy, even though the evidence to prove the two offenses may overlap significantly. See United States v. Pizzonia, 577 F.3d 455, 463 (2d Cir. 2009) (noting that the evidence used to prove a RICO enterprise and a RICO conspiracy may overlap, but "[t]he concepts of racketeering conspiracy, enterprise, and pattern . . . are not interchangeable"). Antoine Mayes could have conducted narcotics sales independently, without the unlawful agreement required for a conspiracy, but those sales could nonetheless have furthered an enterprise of which Anthony Mayes was also a member. The prior jury verdict required the limited factual finding that Antoine and Anthony Mayes did not conspire with regard to those seven sales, but that limited finding has no bearing on whether the sales were conducted in furtherance of a RICO enterprise charged under a different criminal statute. See United States v. McGowan, 58 F.3d 8, 13-14 (2d Cir. 1995) (finding that defendant who was acquitted of conspiracy charges that require an agreement can still be tried for "agreeing to accept an illegal payment" under a different statute).

Therefore, the guilty pleas to the seven narcotics distributions are admissible to prove all aspects of the substantive RICO charge against Antoine Mayes. Collateral estoppel also does not bar the admission of the evidence of the sales against both Mayes brothers to establish the other elements of the substantive RICO charge, including the existence and nature of the RICO enterprise, the nexus of that enterprise with interstate commerce, and the relationship and continuity of acts necessary to establish a pattern of racketeering activity. See Basciano, 599 F.3d at 207.

### 2. The RICO Conspiracy Charge

In Count One, the defendants are charged with conspiring to violate Section 1962(c) of the RICO statute, the crime charged in Count Two. In pertinent part, Section 1962(d) provides:

10

"It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section." 18 U.S.C. § 1962(d). To prove a RICO conspiracy, the government must establish "an agreement to conduct or to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity." Pizzonia, 577 F.3d at 462. In order to establish the pattern element of the conspiracy, the government must prove that the defendant agreed that at least two predicate acts would be committed by some member of the conspiracy as part of the conduct of the enterprise. See Basciano, 599 F.3d at 199 ("[T]he pattern element demands proof of an agreement to commit at least two crimes."); Pizzonia, 577 F.3d at 465 (for RICO conspiracy, "no less than two predicate acts must be . . . agreed to"); United States v. Persico, 832 F.2d 705, 713 (2d Cir. 1987) ("In order to convict a defendant of RICO conspiracy, only an agreement to commit two or more predicate acts, rather than the acts themselves, need be proven."). In Salinas v. United States, 522 U.S. 52 (1997), the Supreme Court held that the government need not prove that the defendant committed or agreed to commit the two predicate acts himself. Id. at 64. Instead, "[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Id. at 65.

It follows from Salinas that proof of a RICO conspiracy does not require the government to prove the actual existence of the elements of the substantive offense—such as an enterprise and a pattern of racketeering activity. See United States v. Applins, 637 F.3d 59, 74-75 (2d Cir. 2011) (holding that Salinas counsels that the actual establishment of the enterprise is not a required element to prove a RICO conspiracy). Nonetheless, the government must establish that the defendant agreed to participate in an undertaking that, if accomplished, would satisfy all of those elements. In assessing the evidence on the RICO conspiracy count, the jury must therefore

11

be mindful of the meaning of the elements of the substantive offense—such as the nature and existence of the RICO enterprise and the requisite pattern of racketeering activity supported by relatedness and continuity. This is so because the jury must determine the question of whether the conspiracy would satisfy all of those elements *if* the conspiracy were to accomplish its goal. On this issue, all of the evidence relevant on the substantive count as discussed above— including the acts of other enterprise members admissible to establish the existence and nature of the enterprise, the nexus with interstate commerce, and the pattern of racketeering activity—is necessarily relevant on the conspiracy count as well.

There is, however, one element of the RICO conspiracy charge with respect to which application of collateral estoppel limits the proof that may be adduced against both Mayes brothers. I conclude that the government cannot use Antoine Mayes's guilty pleas to the seven counts of cocaine base distribution to prove an agreement that at least two racketeering acts would be committed. Allowing the jury to consider these seven sales as proof of the requisite agreement would permit the jury to find that the Mayes brothers agreed with each other that one or more members of the RICO conspiracy would carry out these sales. As discussed above, however, the acquittal in the prior case necessarily means that the jury at that trial did not find that such an unlawful agreement between the brothers had been proven with regard to any of these seven sales.[2] The doctrine of collateral estoppel thus bars the government from relitigating this issue that has already been decided in each defendant's favor. See Duffy, 188 F. Supp. 2d at 286 (where prior jury necessarily found defendant was not the assailant, government is precluded

---

[2] Under different factual circumstances, it might be possible to distinguish between an unlawful agreement between the defendants to carry out the sales themselves, and an unlawful agreement that any enterprise member would carry out the sales. In this particular case, however, it is undisputed that Antoine Mayes himself was the one who conducted the seven cocaine base distributions. Therefore, I find that the jury's determination that the Mayes brothers did not enter into an unlawful agreement regarding the seven sales necessarily implies a finding that the brothers did not agree that some other member of the enterprise would carry out the seven sales.

in retrial from arguing that defendant possessed ammunition); <u>United States v. Nenadich</u>, 689 F. Supp. 285, 293 (S.D.N.Y. 1988) (acquittal on narcotics possession charge in first trial "could only have been based on a determination that the defendant had not committed any of the acts alleged," so on retrial the government cannot introduce evidence relating to the possession of narcotics on the date in question).

The government argues that collateral estoppel bars the introduction of specific evidence only if a prior jury necessarily rejected that evidence. Gov't Opp'n at 2-3. Here, no one argues that the prior jury rejected the evidence that Antoine Mayes sold cocaine base on seven occasions. To the contrary, collateral estoppel limits the use of the seven narcotics sales precisely because the prior jury must have accepted this undisputed evidence, and yet the jury still acquitted both Mayes brothers of cocaine base conspiracy. This acquittal necessarily determined that the government had not proven that Antoine and Anthony Mayes entered into an agreement with each other with regard to any of the seven sales. Therefore, the government is barred from proving the RICO conspiracy by arguing that the defendants entered into an agreement that one or more members of the enterprise other than themselves would carry out those same sales.

This very limited application of collateral estoppel does not otherwise hamper the government in proving the defendants' membership in the RICO conspiracy in accordance with the well-established law of conspiracy. The government can prove the existence of an agreement to commit at least two predicate acts without proving that each conspirator had "specific knowledge of or participation in each predicate act conducted by" co-conspirators. <u>United States v. Yannotti</u>, 541 F.3d 112, 122 (2d Cir. 2008) ("It is well-settled that a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not

13

outside the scope of the illegal agreement."); see also United States v. Zichettello, 208 F.3d 72, 100 (2d Cir. 2000) ("[T]here is no rule requiring the government to prove that a conspirator knew of all criminal acts by insiders in furtherance of the conspiracy . . . . To be convicted as a conspirator, one must be shown to have possessed knowledge of only the general contours of the conspiracy."). The government is barred by collateral estoppel only from using Antoine Mayes's guilty pleas to the seven cocaine base distributions to prove that the Mayes brothers entered into an unlawful agreement that one or more members of the enterprise would commit two predicate acts, because a prior jury determined that the government did not prove such an agreement between the brothers with regard to those sales.

## CONCLUSION

For the foregoing reasons, defendant Antoine Mayes's motion is granted in part and denied in part. The motion to dismiss Racketeering Acts Twelve through Eighteen from the indictment is denied, but the government is barred by collateral estoppel from adducing evidence that defendants Anthony and Antoine Mayes entered into an unlawful agreement regarding any of the seven cocaine base distributions charged in those acts. Antoine Mayes's guilty pleas to the seven distributions are admissible against him to prove the substantive racketeering offense charged in Count Two of the indictment, including the existence and nature of the RICO enterprise, the interstate commerce nexus, and the pattern of racketeering activity. Insofar as these same issues are also pertinent to the RICO conspiracy, the doctrine of collateral estoppel does not bar consideration of Antoine Mayes's guilty pleas on Count One as well. The guilty pleas are not, however, admissible on Count One to prove an agreement between the Mayes brothers that one or more members of the enterprise would commit at least two predicate acts.

14

Through the use of limiting instructions and jury charges, the court will advise the jury regarding the uses that may and may not be made of Antoine Mayes's guilty pleas to the seven cocaine sales. The court invites counsel to submit proposed language for limiting instructions and the jury charge regarding the limitations on the use of this evidence consistent with this opinion.

While the foregoing addresses the collateral estoppel concerns present in this case, there may still be a serious Confrontation Clause issue regarding the use of the testimonial evidence of Antoine Mayes's prior guilty pleas against any other defendant. Specifically, counsel for Anthony Mayes and the government should address whether it is permissible under Crawford v. Washington, 541 U.S. 36 (2004), to admit Antoine Mayes's guilty pleas against Anthony Mayes for any purpose, such as establishing the existence and nature of the RICO enterprise, the interstate commerce nexus, or the pattern of racketeering activity. The court directs the parties to file cross-briefs on this issue by Tuesday, January 7 at 5 p.m., and responsive briefs by Thursday, January 9 at 5 p.m. The parties may also wish to address this issue orally at the status conference scheduled for Monday, January 6 at 2 p.m.

SO ORDERED.

      /s/_____
      Allyne R. Ross
      United States District Judge

Dated:  January 2, 2014
       Brooklyn, New York