UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>— against —<br><br>DANIEL MYRICK,<br>　　　　　　Defendant. | No. 12-CR-385 (ARR)<br><br>Not for print or electronic publication<br><br>Opinion & Order |

ROSS, United States District Judge:

Defendant Daniel Myrick, through counsel, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes. For the reasons set forth below, Myrick's motion is denied.

## BACKGROUND

Defendant Daniel Myrick pleaded guilty to racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d), 1963, and murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). Judgment, ECF No. 288. Myrick played a "major role" in a violent narcotics distribution enterprise. Gov't's Sent. Mem. 2, 7, ECF No. 277. In addition to selling crack and cocaine, Myrick participated in murder, attempted murder, and arson, including shooting and killing one victim and helping dispose of the body of another. *Id.* 7–8.

I sentenced Myrick to 204 months in prison followed by five years of supervised release. Criminal Cause Sent., ECF No. 287. Myrick is currently incarcerated at Yazoo City USP, and his release is scheduled for July 16, 2028. Def.'s Mot. Compassionate Release 1 ("Def.'s Mot."), ECF No. 364. He has served less than half of his sentence.

1

Myrick now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that release is warranted because of his medical conditions and the struggles faced by his children's caretaker. Def.'s Mot. 1. The government opposes. Opp'n Def.'s Mot. Compassionate Release ("Gov't's Opp'n"), ECF No. 367.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting that defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (internal quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, No. 19-3218, --- F.3d ---, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020). "The only statutory limit on what a court may consider to

be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id*. at *8 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c) is not binding on a district court, *see id*. at *6, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios: first, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia"; and second, where "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i)–(ii) (2018) ("U.S.S.G.").

Extraordinary and compelling reasons may also exist based on "family circumstances," for example in the event of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* cmt. 1(C). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

3

      (2) the need for the sentence imposed—
          (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
          (B) to afford adequate deterrence to criminal conduct;
          (C) to protect the public from further crimes of the defendant; and
          (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
      (3) the kinds of sentences available;
      (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
      (5) any pertinent [Sentencing Commission] policy statement . . . .
      (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
      (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

## DISCUSSION

### I.    Administrative Exhaustion

A prisoner exhausts his administrative remedies after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A). In this case, Myrick requested compassionate release from the Bureau of Prisons ("BOP") in late July 2020. Gov't's Opp'n 5; Def.'s Mot. 6. At the time that Myrick filed this motion, more than thirty days had passed without a response from the BOP. *Id.* Therefore, he has satisfied the exhaustion requirement.

### II.    Extraordinary and Compelling Reasons

4

### a. Health Conditions

Myrick argues that his preexisting medical conditions, combined with the high risk of COVID-19 infection at Yazoo City USP, constitute extraordinary and compelling reasons for release. I recognize that COVID-19 continues to pose a real risk to this country's imprisoned population, even despite measures that the government asserts that BOP is taking to combat the spread of the disease. *See* Gov't's Opp'n 9. The rate of confirmed COVID-19 infections at Yazoo City USP has increased steadily since August, with 32 inmates and 7 staff members currently infected as of October 16, 2020. Def.'s Mot 3; *COVID-19 Cases*, Fed. Bureau Prisons, https://www.bop.gov/coronavirus (last updated Oct. 16, 2020).

However, Myrick has failed to demonstrate that he would be at high risk of serious illness in the event that he became infected with COVID-19. Myrick suffers from anemia, hypothyroidism, and elevated blood sugar levels which place him at an "increased risk of diabetes." Def.'s Mot. 4. He also states that his bloodwork in June 2019 revealed a low level of neutrophils, a type of white blood cell that fights infections, and a low anion gap. *Id.* Finally, he is coping with a "probable ACL tear" in his knee, and has been recommended for knee surgery. *Id.*

Myrick has not provided sufficient evidence supporting his claim that any of these medical conditions, together or alone, place him at high risk of serious complications from COVID-19. Courts in this circuit have frequently found that high-risk medical conditions identified by the Centers for Disease Control and Prevention ("CDC") constitute extraordinary and compelling reasons for release. *See*, *e.g.*, *United States v. Parra*, No. 13-CR-784 (RA), 2020 WL 4586789, at *3 (S.D.N.Y. Aug. 10, 2020) ("Courts in this district have repeatedly held that medical conditions such as obesity, sleep apnea, and asthma may establish an 'extraordinary and

compelling reason' warranting release"); *United States v. Suero*, No. 11-CR-84 (PAE), 2020 WL 4548043, at *3 (S.D.N.Y. Aug. 6, 2020) (finding that defendant's hypertension and cardiomyopathy constituted an extraordinary and compelling reason for release); *United States v. Williams*, No. 17-CR-121 (VAB), 2020 WL 1974372, at *3–4 (D. Conn. Apr. 24, 2020) (finding that defendant's asthma, hypertension, diabetes, and history of kidney and heart problems constituted an extraordinary and compelling reason for release).

Myrick, by contrast, does not currently suffer from any CDC-identified high-risk medical conditions, nor has he otherwise persuaded me that his medical conditions place him at an exceptional risk of severe illness. First, while Myrick's blood sugar levels place him at an "increased risk" of developing diabetes, Def.'s Mot. 4, he has not actually developed diabetes. According to the CDC, people with Type 2 diabetes are at an increased risk of serious illness if infected with COVID-19, while people with Type 1 diabetes "might" be at an increased risk. *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Oct. 16, 2020). However, the CDC does not indicate that pre-diabetic people face any elevated risk.

Myrick also argues that he is immunocompromised due to the low level of neutrophils in his blood. According to Myrick's medical records, blood tests in 2018 and 2019 revealed low levels of neutrophils, a type of white blood cell that fights infection. BOP Medical Recs. 179, 231, ECF No. 368-3[1]; *see* Susan York Morris, *Understanding Neutrophils: Function, Counts,*

---

[1] I include details of Myrick's medical conditions here, even though his medical records were filed under seal by the government. Myrick has mentioned these details in his public motion. *See* Def.'s Mot. 4–5. Doing so "largely waive[s]" his privacy interest in these facts. *United States v. Ebbers*, 432 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2020). Given that Myrick's medical conditions are central to his claim for a sentence reduction, I find "the presumption of access to the courts overcomes [his] privacy interest.". *Id.* (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d

*and More*, HEALTHLINE (last updated Sept. 28, 2018),

http://www.healthline.com/health/neutrophils. Myrick's 2019 blood test also revealed a low anion gap. BOP Medical Recs. 230. Myrick cites a medical article stating that a low anion gap is "uncommon" and should prompt retesting, as it "may indicate kidney problems, heart disease or some types of cancer." Def.'s Mot. 4 (citing *Anion Gap Blood Test*, MEDLINEPLUS, http://medlineplus.gov/lab-tests/anion-gap-blood-test (last updated July 30, 2020)). Myrick's blood levels have not been retested since June 2019.

These blood test results are concerning. However, without any evidence that Myrick has actually developed any such kidney problems, heart disease, or cancer, I cannot reasonably find that his low anion gap in June 2019 places him at high risk of serious illness. Similarly, his neutrophil count has not been retested since June 2019, leaving me with insufficient evidence to support a finding that he currently suffers from a compromised immune system. Given the abnormality of his 2019 blood test results and the severity of the potential diseases associated with a low anion gap, I urge the government to contact the Bureau of Prisons to ensure that Myrick's blood levels are retested and that any abnormalities are treated appropriately.

Myrick also argues that his anemia increases his risk of serious illness because recent medical studies have suggested a link between anemia and severe COVID-19 complications. Def.'s Mot. 4. One of the studies cited by Myrick states that anemia "may" play an important role in multiple organ dysfunction syndrome, and that, "if confirmed," this finding would carry important implications for COVID-19 patients. Petek Eylul Taneri et al., *Anemia and Iron Metabolism in COVID-19: A Systematic Review and Meta-Analysis*, MEDRXIV (June 5, 2020),

---

110, 123 (2d Cir. 2006)). I direct Myrick and the government to propose joint redactions to the sealed medical records that account for the facts stated in this opinion within seven days.

http://www.medrxiv.org/content/10.1101/2020.06.04.20122267v1. The other article cited by Myrick labels anemia as a "potential" predictor of severe illness and mortality. Kang Zhao et al., *Serum Iron Level as a Potential Predictor of Coronavirus Disease 2019 Severity and Mortality: A Retrospective Study*, OPEN FORUM INFECTIOUS DISEASES (June 21, 2020), http://doi.org/10.1093/ofid/ofaa250.

While these early studies are troubling, I do not have enough information before me to find that Myrick's anemia places him at high risk. The CDC has not identified anemia as a medical condition associated with COVID-19 complications. Furthermore, there is no record showing that Myrick has had his iron levels retested since June 2019, or that he has been prescribed iron supplements or any other treatment for his anemia. BOP Medical Recs. 231. I urge the government to ensure that the BOP monitors and treats Myrick's anemia.

As for his hypothyroidism and knee injury, Myrick has not made any specific arguments that these conditions increase his risk of serious illness if he were to become infected with COVID-19.

Finally, Myrick argues that his race puts him at a higher risk of serious illness, citing the fact that COVID-19 has had a greater toll on Americans of color than white Americans. Def.'s Mot. 5. The disproportionate impact of COVID-19 on people of color is highly disturbing, but courts have tended to attribute this trend to social inequities, and have not found race to be an indicator of an individual's risk of infection or serious illness associated with the virus. *See*, *e.g.*, *United States v. Leigh-James*, No. 15-CR-188 (SRU), 2020 WL 4003566, at *8 (D. Conn. July 15, 2020) (stating that "so far as is currently understood, [the] difference [in COVID-19's impact on people of color] most probably owes to long-standing systemic health and social inequities" and finding that "as other courts have also recognized, the fact of [defendant's] race itself does

not constitute a risk factor for COVID-19, in the same way, as, for instance, an underlying medical condition does" (citations omitted)); *United States v. Gayle*, No. 10-CR-391-19 (CM), 2020 WL 4671718, at *3 (S.D.N.Y. Aug. 12, 2020) (finding that defendant's race was not enough to constitute an extraordinary and compelling reason for release).

### b. Family Circumstances

Myrick also argues that compassionate release is warranted because challenging family circumstances may "potentially render" his children's caretaker "unable to continue in that role." Def.'s Mot. 1. Myrick's children are cared for by their maternal grandmother, who also has two children of her own. Def.'s Mot. Ex. A, ECF No. 364-1. Both of Myrick's children have special needs; one is diagnosed with PTSD, ADHD, and depression, and the other is diagnosed with autism. *Id.* Their grandmother works full time in addition to caring for the children and juggling the services and appointments related to their special needs. *Id.* She has missed many days of work, "[a]lmost to the point of losing [her] job." *Id.* The stress of these competing obligations has only been magnified by the COVID-19 pandemic. *Id.* Although Myrick concedes that his children's grandmother is "not incapacitated," he argues that she is "quickly getting to the point where she effectively is so." Def.'s Mot. 5.

The Sentencing Commission Guidelines suggest that an extraordinary and compelling reason for release exists where the caretaker of the defendant's minor children is deceased or incapacitated. U.S.S.G. § 1B1.13 cmt. 1(c). Although I am not bound to follow the Sentencing Commission Guidelines, *Brooker*, 2020 WL 5739712, at *7, I still do not find that Myrick has demonstrated that his family circumstances constitute an extraordinary and compelling reason for release. Courts in this circuit have repeatedly found that similar challenging circumstances do not warrant release when the caretaker is not truly incapacitated, or when there may be other

9

family members available to care for the children. *See United States v. Heaphy*, No. 17-CR-168 (JAM), 2020 WL 5633285, at *4 (D. Conn. Sept. 21, 2020) (finding that although the caretaker of the defendant's children had to balance work, childcare and schooling during the pandemic, the caretaker was not incapacitated, and therefore no extraordinary and compelling reason for sentence reduction existed); *United States v. Yoda*, No. 15-CR-95 (AJN), 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) (finding that because defendant had not alleged that he was the only other possible caretaker of his ailing father, and had several siblings who may have been able to help with caretaking duties, release was not warranted); *United States v. Vailes*, No. 16-CR-297 (AMD), 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020) ("There is no question that a defendant's incarceration is painful and burdensome to family members, who must bear the stress of managing their lives without the defendant's help. It is an unfortunate fact, however, that these burdens are common to almost all families of incarcerated people, and do not constitute extraordinary or compelling factors.").

In the present case, Myrick has acknowledged that his children's grandmother is not currently incapacitated. Def.'s Mot. 5. Nor has he alleged that he is the only possible caretaker for the children in the event that the grandmother becomes incapacitated. I received several letters of support from Myrick's other family members. Def.'s Mot. Exs. E–G, ECF Nos. 364-5, 364-6, 364-7. Although, as Myrick points out, none of them explicitly offered to take over custody of the children, Def.'s Mot. 6, they did not state that they *cannot* contribute to the children's care in any way, and all but one of them offered their aid in supporting Myrick more generally. Def.'s Mot. Exs. E–G.

### III.    Section 3553(a) Factors and the Sentencing Commission's Policy Statements

Although Myrick has made strides towards his rehabilitation, Def.'s Mot. 11, the serious

and violent nature of his offenses militate against release. As Myrick concedes, his offenses are of the "most serious" nature. Def.'s Mot. 10. In addition to his narcotics crimes, Myrick was convicted of murder. Myrick shot and killed one victim, and helped dispose of the body of another. Gov't Sentencing Mem. 7–8.

Moreover, Myrick has served less than half of his sentence. If I were to release him now, his sentence would fail to "reflect the seriousness of the offense, . . . promote respect for the law, . . . [or] provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Nor would a dramatically reduced sentence "afford adequate deterrence to criminal conduct" or "protect the public from further crimes of the defendant." *Id.* § 3553(a)(2)(B)–(C). Given Myrick's prior involvement with multiple murders and violent acts, I cannot rest assured that he would not pose a danger to the community if released. 18 U.S.C. § 3142(g)(4).

## CONCLUSION

For the reasons set forth above, Myrick's motion for compassionate release is denied.

SO ORDERED.

Dated: October 19, 2020
       Brooklyn, NY

                                                /s/_____
                                                Allyne R. Ross
                                                United States District Judge